UNITED STATES of America, Appellee,

v.

Jose DeLaCruz SANCHEZ SOLIS, Defendant–Appellant.

No. 1301, Docket 88–1490.

United States Court of Appeals, Second Circuit.

Argued June 13, 1989.

Decided Aug. 15, 1989.

Helena Pichel Solleder, New York City, for appellant.

E. Scott Gilbert, Asst. U.S. Atty., S.D. N.Y. (Benito Romano, U.S. Atty., Vincent L. Briccetti, of counsel), New York City, for appellee.

Before OAKES, Chief Judge, and VAN GRAAFEILAND and PRATT, Circuit Judges.

OAKES, Chief Judge:

Jose DeLaCruz Sanchez Solis appeals a judgment of conviction and sentencing entered by the United States District Court for the Southern District of New York, Peter K. Leisure, Judge. Sanchez was convicted of conspiracy to distribute and to possess with intent to distribute more than five hundred grams of cocaine, and of distribution and possession of approximately one kilogram of cocaine. *See* 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) (1982 & Supp. V 1987). He appeals both his conviction and his sentence. We affirm the conviction but remand for resentencing.

Sanchez' conviction resulted from events that occurred on June 22, 1988 in Manhat-

tan. Willie Gray, a Drug Enforcement Administration ("DEA") special agent, testified that he arranged with one Luis Gonzalez to buy a kilo of cocaine. Gonzalez stated that the cocaine would be delivered shortly in a blue car. Sanchez soon arrived in a blue car. Gonzalez called to him and followed the car on foot until Sanchez parked. Gonzalez retrieved a shopping bag from the car and gave the bag, which contained 999.6 grams of cocaine, to Gray. DEA agents then converged on Gray's vehicle. Sanchez fled, and he was found hiding in an apartment courtyard with a beeper device and keys for the blue car nearby.

Luis Pizarro, a DEA agent, testified that Sanchez made an oral statement to Pizarro after the arrest. According to Pizarro, Sanchez admitted that he knew that the package contained drugs. Sanchez testified at trial that he did not know what the package contained and that he had agreed to deliver it for a man he did not know.

A jury found Sanchez guilty of both of the counts charged in his indictment, and Judge Leisure sentenced him to concurrent terms of imprisonment for eight years on each count, concurrent ten-year terms of supervised release for each count, and the mandatory $50 assessment on each count. Sanchez now challenges both his conviction and his sentence.

Sanchez argues first that there was insufficient evidence of his guilt. As to the conspiracy charge, he argues that there was very little evidence that a conspiracy existed. His indictment accused him of conspiring with Gonzalez and others, but there was no evidence, other than the events of June 22, that he knew Gonzalez or that they had any common acquaintances. Two bystanders, he points out, testified that he attempted to deliver the package to them rather than to Gonzalez. The Government answers that Sanchez' delivery of the package and his post-arrest statement that he knew that the package contained drugs are evidence of guilt. Additional circumstantial evidence, the Government argues, is present: Sanchez carried a beeper, the jury might have found that he testified falsely, and his flight from

the DEA agents might have demonstrated consciousness of guilt.

When an appellant challenges the sufficiency of the evidence, the conviction should be affirmed if, " 'after viewing the evidence in the light most favorable to the prosecution,' the reviewing court finds that '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Nusraty,* 867 F.2d 759, 762 (2d Cir.1989) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). For a conspiracy conviction to be affirmed, there must be "some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Gaviria,* 740 F.2d 174, 183 (2d Cir.1984) (citing *United States v. Soto,* 716 F.2d 989, 991 (2d Cir.1983)).

 We agree with the Government that Sanchez' delivery of the drugs and his post-arrest statement provided sufficient evidence of his knowing participation in the conspiracy. Appellant's possession and delivery of the drugs distinguish this case from *Nusraty,* in which we reversed the conviction of a defendant who was merely present in suspicious circumstances. In Sanchez' case, unlike Nusraty's, the defendant's conduct was of the sort from which the jury could infer knowledge of the conspiracy. *See Nusraty,* 867 F.2d at 763. Although Sanchez stresses the lack of proof that he knew Gonzalez, the Government was not required to prove that Gonzalez and Sanchez conspired directly with each other. *United States v. Rooney,* 866 F.2d 28, 32 (2d Cir.1989). Finally, we reject Sanchez' argument, which was based on

Agent Pizarro's failure to produce any contemporaneous notes regarding Sanchez' post-arrest statement, that Pizarro's testimony was "incredible as a matter of law." We refuse to second-guess the jury's evaluation of witness Pizarro's credibility, and we note that, in any event, the lack of corroboration would affect the evidence's weight, rather than its sufficiency. *United States v. Roman,* 870 F.2d 65, 71 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3164, 104 L.Ed.2d 1026 (1989).[1]

 Sanchez' second argument is that various evidentiary rulings were erroneous and deprived him of a fair trial. His principal complaint is that the district court should not have allowed a DEA agent to testify that drug dealers use beepers. Although Sanchez had a beeper and business cards (apparently from third parties) with beeper phone numbers on them, there was no evidence that a beeper was involved in this transaction, and he testified that he had found the beeper and that it did not work. We find that the trial court, which reminded the jury that there was no evidence that a beeper had been used in the case, did not abuse its discretion when it decided that the testimony's probative value was not "substantially outweighed" by the danger of undue prejudice. *See* Fed.R. Evid. 403. The use of beepers by narcotics dealers may be a proper subject for expert testimony, *see United States v. Ginsberg,* 758 F.2d 823, 830 (2d Cir.1985), and we believe that the Government was entitled to argue to the jury that Sanchez possessed a device commonly used by drug dealers, *see United States v. Zapata–Tamallo,* 833 F.2d 25, 28 (2d Cir.1987) (per curiam) (describing a beeper as "a device commonly used to facilitate narcotics transactions").[2]

---

**1.** Appellant also challenges the sufficiency of the evidence to support his substantive conviction of distribution and possession with intent to distribute. He admits that he had possession of the drugs, but notes that the drugs were wrapped in a package so that he could not see them. As with the conspiracy charge, we find that his delivery of the drugs and Agent Pizarro's testimony about the post-arrest statement provided sufficient evidence for the jury to infer that Sanchez intended to distribute drugs.

**2.** Appellant also objects to the admission of testimony that the word "Zorro," which was written on the package, was a kind of brand name for drugs. However, defense counsel did not object to this testimony at trial and even if the testimony were irrelevant, its admission would have constituted harmless error. The district court was also entitled to reject extrinsic evidence of Sanchez' employment history; we agree that photographs of him at work in Venezuela were not particularly relevant.

We also reject Sanchez' argument that the testimony was "rank hearsay"; he did not object on this ground at trial, and the information was a permissible part of the agent's expert testimony. *See Ginsberg,* 758 F.2d at 830 (rejecting hearsay challenge to testimony about beeper).

■ Sanchez' third argument is that the prosecutor acted improperly when he suggested that Sanchez had lied on the witness stand. This misconduct, Sanchez argues, denied him a fair trial and warrants reversal. We reject this argument. While a prosecutor should not vouch for his own witness's credibility, *see United States v. Modica,* 663 F.2d 1173, 1178–79 (2d Cir. 1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982), or state his personal belief as to the defendant's guilt or innocence, *see United States v. Smith,* 778 F.2d 925, 929 (2d Cir.1985), we have approved the limited, non-inflammatory use by a prosecutor of terms such as "lies" to describe testimony that is challenged as untruthful, *see United States v. Resto,* 824 F.2d 210, 212 (2d Cir.1987). Our review of the Government's closing argument convinces us that the prosecutor's comments were not inflammatory.

■ Sanchez' fourth argument is that the court's instructions to the jury on conscious avoidance, the time period of the conspiracy, and law enforcement techniques deprived him of a fair trial. We reject these arguments. Given the evidence at trial, the conscious avoidance charge properly permitted the jury to infer that Sanchez knew of the conspiracy's objectives even if he deliberately avoided enlightenment as to the contents of the package he delivered. *See United States v. Guzman,* 754 F.2d 482, 488–89 (2d Cir. 1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 766 (1986). Sanchez waived his objections to the other two charges, and we find that there was no plain error in the instructions that the Government is not required to use any particular law enforcement techniques and that the conspiracy contemplated the distribution of at least 500 grams of cocaine over a period of time.

■ Sanchez also argues that the verdict was coerced.[3] He notes that the jury was asked to deliberate until 9:00 at night, that one juror wrote a note expressing fatigue, and that the district court permitted the marshal to respond to two requests for aspirin without inquiring about the health of the jurors. Sanchez' trial counsel, however, specifically approved each decision that the district court made. We find that the court did not abuse its discretion. *See United States v. Corcione,* 592 F.2d 111, 117 (2d Cir.) (speculation that jury might have been coerced was unsupported by the record), *cert. denied,* 440 U.S. 975, 99 S.Ct. 1545, 59 L.Ed.2d 794, 440 U.S. 985, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979); *United States v. Minieri,* 303 F.2d 550, 556 (2d Cir.) (within the discretion of the trial court to determine how long to hold the jury), *cert. denied,* 371 U.S. 847, 83 S.Ct. 79, 9 L.Ed.2d 81 (1962).

Next, Sanchez argues that his sentence was illegal under the Sentencing Guidelines because the district court imposed a sentence in excess of the prescribed range without adequately stating its reasons for the departure. The Government acknowledges that the district court incorrectly applied the Sentencing Guidelines. It there-

---

We find that it was proper for the court to refuse to permit the two bystanders to testify about what Sanchez said to them. This statement was hearsay, *see* Fed.R.Evid. 801(c), and defense counsel offered no exception to the hearsay rule. We reject Sanchez' argument on appeal that the testimony should have been accepted as a prior consistent statement under Rule 801(d)(1)(B). Sanchez had not yet testified, so his testimony could not be corroborated at that point.

Sanchez waived his other evidentiary claims by failing to object at trial. We will not consider these claims on appeal because we perceive no manifest injustice in the district court's decisions to admit the business cards found in Sanchez' wallet, to allow the Government to question Sanchez about a bullet found in his wallet, and to allow the Government to ask a defense witness whether he had signed a bond for Sanchez' release.

3. We reject out of hand his suggestion that the verdict may have been rendered by fewer than 12 jurors, because we note that the jurors were polled.

fore agrees to a remand for resentencing, but it contends that the sentence can still be justified under the Guidelines.

Judge Leisure did not sentence under the Guidelines, having previously found them unconstitutional. He observed that Sanchez' sentence exceeded that which the Guidelines would have prescribed, but he explained this departure so that the sentence would stand if the Supreme Court upheld the Guidelines.[4] It seems, however, that he may have had two reasons for the upward departure:

> [T]here is one concern the court has in all of these cases, and that is the ever increasing trafficking in drugs in our society and the harm that is done by those that continue to traffic in drugs. They have been referred to by one judge as merchants of death, those that deal in drugs. It is destructive to communities, it is destructive to the lives of the people in the community, and something has to be done. A message has to go out that those that are willing to deal in drugs are going to receive substantial jail terms no matter how peripheral their involvement may be.

> If that message goes out, it may stop people from dealing in drugs in the community.

> It's a serious matter, so my sentence is going to be greater than the guidelines, and I am doing that for the very reason stated by the government. The defendant testified before me in this trial and he committed perjury in front of me.

> In addition to dealing in drugs, he committed perjury, a very serious crime, and I'm entitled under the law in this circuit to consider the perjury of the defendant as an additional factor in imposing sentence.

> So under the teaching of *United States v. Correa-Vargas* [860 F.2d 35 (2d Cir.1988)], I am imposing a sentence greater than the sentencing guidelines. I'm not influenced by the guidelines since I find them unconstitutional, but in the

event the Supreme Court disagrees, I am making a record of why it is greater than the sentencing guidelines.

Although the Presentence Investigation Report ("PSI") indicated that Sanchez' offense level was 26, which called for a term of imprisonment of 63 to 78 months, Sanchez was sentenced to 96 months in jail for each count. The Government argues that the 96–month sentence would have been correct if the PSI had reflected Sanchez' false testimony. The Guidelines provide for the increase of a defendant's offense level by two levels if the defendant willfully obstructs justice, and the Government argues that this provision should have been applied to Sanchez, giving him an offense level of 28. *See* United States Sentencing Commission, *Guidelines Manual* § 3C1.1, Application Note 1(c) (1987) [hereinafter Guidelines]; *id.* ch. 5, part A at 5.2 (sentencing range for an offense of level 28 is 78 to 97 months).

 The Government takes a different tack in defending Sanchez' concurrent ten-year terms of supervised release. It recognizes that this part of the sentence would exceed the permissible range of three to five years on the first count and four to five years on the second count whether or not Sanchez' offense level is increased because of obstruction of justice. *See* Guidelines § 5D3.2(a) & (b); 21 U.S.C. § 841(b)(1)(B) (Supp. V 1987). However, the Government argues that the terms of supervised release could result from a proper exercise of the district court's discretion to depart from the Guidelines under 18 U.S.C. § 3553(b) (Supp. V 1987) (authorizing departure from prescribed range if court finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission"). Perjury was, of course, taken into consideration by the Sentencing Commission; it is a component of the obstruction of justice adjustment that the Government argues would justify Sanchez' 96–month term of

---

**4.** The Supreme Court rejected constitutional challenges to the Guidelines in *Mistretta v. United States,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). *See also United States v. Vizcaino,* 870 F.2d 52 (2d Cir.1989) (rejecting due process challenge).

imprisonment. Departure based upon a factor listed elsewhere in the Guidelines is allowed only "in light of unusual circumstances." Guidelines § 5K2.0. We doubt that such circumstances are present in this case because we cannot see how Sanchez' false testimony could amount to obstruction of justice "to a degree" not taken into consideration by the Commission. *See* 18 U.S.C. § 3553(b).

 On remand, the district court should, of course, sentence under the Guidelines. If the court determines that a two-level adjustment for obstruction of justice should have appeared in the PSI, it need not consider whether the Government has waived its right to request that this factor be taken into account; in the interests of truth and fair sentencing a court should be able on a sentence remand to take new matter into account on behalf of either the Government or the defendant. Any new findings should be reached, however, only after both parties have had an opportunity to be heard. *See* Fed.R. Crim.P. 32(a)(1) & (c)(3)(A); Guidelines § 6A1.3; *United States v. Cervantes,* 878 F.2d 50, 55–56 (2d Cir.1989). If the court decides to enhance Sanchez' sentence for the reasons it stated previously, it should tell whether the enhancement is designed to penalize perjury or to send a message to drug dealers, and it must tell why the relevant factor was of a kind, or to a degree, inadequately considered by the Commission.

Finally, we reject Sanchez' claim that he should not have received a greater sentence than Gonzalez. Judge Leisure sentenced Gonzalez, who pleaded guilty, to 60 months in jail. We reject Sanchez' claim that the disparity in sentences violates the Sentencing Reform Act, which seeks to avoid "unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6), and we reject his suggestion that he was penalized for exercising his right to a trial. While we are unaware of the circumstances of Gonzalez's sentencing, we do not believe that any Guidelines-mandated sentence that Sanchez receives could be the product of unfair disparity.

Judgment of conviction affirmed; case remanded for resentencing.